

# The Attorney General of Texas

February 28, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas

Dr. Kenneth Ashworth
Commissioner for Higher Education
Coordinating Board, Texas College and
  University System
Austin, Texas

Opinion No. H-1129

Re: Allocation of funds to colleges and universities under article 7, section 17 of the Texas Constitution.

Gentlemen:

You have requested our opinion regarding the allocation of funds to colleges and universities under article 7, section 17 of the Texas Constitution.

Article 7, section 17, originally adopted in 1947, and amended in 1956 and 1965, levies a state ad valorem tax "for the purpose of creating a special fund" to finance permanent improvements at 17 state institutions designated therein. The 1965 amendment directed the Comptroller to allocate funds among the various institutions for the 12-year period beginning June 1, 1966, according to a specific formula:

> Eighty-five per cent (85%) of such funds shall be allocated by the Comptroller of Public Accounts of the State of Texas on June 1, 1966, and fifteen per cent (15%) of such funds shall be allocated by said Comptroller on June 1, 1972, based on the following determinations:
>
> (1) Ninety per cent (90%) of the funds allocated on June 1, 1966, shall be allocated to state institutions based on projected enrollment increases published by the Coordinating Board, Texas College and University System for fall 1966 to fall 1978.
>
> (2) Ten per cent (10%) of the funds allocated on June 1, 1966, shall be allocated to certain of the eligible state institutions based on the number of additional

square feet needed in educational and general facilities by such eligible state institution to meet the average square feet per full time equivalent student of all state senior institutions (currently numbering twenty-two).

(3) All of the funds allocated on June 1, 1972, shall be allocated to certain of the eligible state institutions based on determinations used in the June 1, 1966, allocations except that the allocation of fifty per cent (50%) of the funds allocated on June 1, 1972, shall be based on projected enrollment increases for fall 1972 to fall 1978, and fifty per cent (50%) of such funds allocated on June 1, 1972, shall be based on the need for additional square feet of education and general facilities.

The amendment then provides:

Not later than June first of the beginning year of each succeeding ten-year period the Comptroller of Public Accounts of the State of Texas shall reallocate eighty-five per cent (85%) of the funds to be derived from said Ten Cent (10¢) ad valorem tax for said ten-year period and not later than June first of the sixth year of each succeeding ten-year period said Comptroller shall reallocate fifteen per cent (15%) of such funds to the eligible state institutions then in existence based on determinations used in the said ten-year period that are similar to the determinations used in allocating funds during the twelve-year period beginning January 1, 1966, except that enrollment projections for succeeding ten-year periods will be from the fall semester of the first year to the fall semester of the tenth year. All such designated institutions of higher learning shall not thereafter receive any general revenue funds for the acquiring or constructing of buildings or other permanent improvements for which said Ten Cent (10¢) ad valorem tax is herein provided, except in case of fire, flood, storm, or earthquake occurring at any such institution, in which case an appropriation in an amount sufficient to replace the uninsured loss so incurred may be made by the Legislature out of any General Revenue Funds.

(Emphasis added). In pursuance of the constitutional directive that you reallocate these funds for the ten-year period beginning June 1, 1978, you first ask whether state colleges and universities created by the Legislature since 1965 are eligible to receive the funds allocated by article 7, section 17.

In our opinion, the funds described in article 7, section 17 may be distributed only to those institutions named therein. The language of the amendment is clear:

> The following state institutions then in existence shall be eligible to receive funds raised from said Ten Cent (10¢) tax levy for the twelve-year period beginning January 1, 1966, and for the succeeding ten-year period:

(Emphasis added). It is well established that tax monies levied and collected for a particular purpose may be expended only for that purpose. Carroll v. Williams, 202 S.W. 504, 506-07 (Tex. 1918). In Attorney General Opinion C-687 (1966), this office held that

> [t]he five cent tax levied for the year 1965 was levied for the purposes set out in Article VII, Section 17 prior to the November, 1965 amendment and therefore should be distributed among the twelve schools listed at the time the tax levy was made. . . . [W]hether based on the tax levied under the 1947, 1956, or 1965 amendments the distribution of funds would depend on which allocation was in effect at the time the particular tax was levied.

(Emphasis in original).

Furthermore, the Legislature has recognized that distribution of funds under article 7, section 17 is limited to the institutions named therein by providing other means for financing permanent improvements at recently created state universities. See, e.g., Acts 1973, 63rd Leg., ch. 659, at 2119; Acts 1977, 65th Leg., ch. 872, at 3058 (Texas A & I — Corpus Christi State University); Acts 1975, 64th Leg., ch. 743, at 2786; Acts 1977, 65th Leg., ch. 872, at 3081 (Texas Eastern University). If these institutions were permitted to share in the allocation of article 7, section 17, any appropriation to them for permanent improvements would be in contravention of that portion of the amendment which prohibits the expenditure of "any general revenue funds for the acquiring or constructing of buildings or other permanent improvements for which said Ten Cent (10¢) ad valorem tax is herein provided . . . ." In addition, the legislative history of amendments and attempted amendments to this section indicate clearly that the section has been consistently interpreted as applying only to those institutions specifically listed. It is our opinion, therefore, that only those institutions designated by name in article 7, section 17 are eligible to receive funds allocated thereunder.

You also ask whether the Comptroller may, for the allocation to be made in June, 1978, vary the formula from the 90 percent enrollment — 10 percent square footage basis used in 1966. Article 7, section 17 requires that the reallocation shall be

> based on determinations for the said ten-year period that
> are similar to the determinations used in allocating funds
> during the twelve-year period beginning January 1, 1966 . . . .

(Emphasis added).    "Similar" does not mean "identical," but rather "having characteristics in common:  very much alike . . . alike in substance or essentials." Webster's New International Dictionary (3d ed.).  As the court noted in Guarantee Mutual Life Insurance Co. v. Harrison, 358 S.W.2d 404 (Tex. Civ. App. — Austin 1962, writ ref'd n.r.e.),

> [i] t is a word with different meanings depending on the
> context in which it is used.

Id. at 406.

In this instance, we believe that the context leaves no room for a variable allocation formula.  The use of "similar" rather than "identical" probably reflects the uncertainty of forecasting in 1965 whether there would indeed be projected enrollment increases for a period beginning 13 years thereafter.  Additionally, in one instance the formula will be based on a ten year period while in another it is based on a twelve year period.  In any case, it is obvious that any determination made in 1978 is unlikely to be identical to one made in 1965, if only because the raw data are somewhat different.  Furthermore, were we to construe "similar" to permit a flexible allocation formula, we would have no means by which to determine what degree of variation from 90-10 is permissible.  Finally, in Guarantee Mutual Life Insurance Co. v. Harrison, supra, the court rejected a 1951 Attorney General's Opinion which had attributed a flexible meaning to "similar." 358 S.W.2d at 406-08.  In our opinion, the Comptroller may not vary the 1978 allocation formula from the 90 percent enrollment — 10 percent square footage basis used in 1966.

## S U M M A R Y

> Only those institutions of higher education designated by
> name in article 7, section 17 are eligible to receive funds
> allocated thereunder.  The Comptroller may not vary the
> 1978 allocation formula from the 90 percent enrollment — 10
> percent square footage basis used in 1966.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

Honorable Bob Bullock
Dr. Kenneth Ashworth    -    Page 5    (H-1129)


APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst